## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

FILED

DEC 03 2025

JOAN KANE, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA.
BY_____, DEPUTY

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | No. CR 25-499 JD |
| **Plaintiff,** | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| **TASHELLA SHERI AMORE** | ) | **Violations:** 18 U.S.C. § 1343 |
| **DICKERSON,** | ) | 18 U.S.C. § 1957(a) |
| a/k/a Sheri Dickerson, | ) | 18 U.S.C. § 981(a)(1)(C) |
| a/k/a Sheri Amore, | ) | 18 U.S.C. § 982(a)(1) |
| a/k/a Rev. T. Sheri Dickerson, | ) | 28 U.S.C. § 2461 |
| | ) | |
| **Defendant.** | ) | |

## INDICTMENT

The Federal Grand Jury charges:

### Introduction

At all times relevant to this Indictment:

1.    **TASHELLA SHERI AMORE DICKERSON** (a/k/a Sheri Dickerson,

a/k/a Sheri Amore, a/k/a Rev. T. Sheri Dickerson) ("**DICKERSON**") was a resident of

the Western District of Oklahoma.

### Relevant Entities

2.    The Oklahoma County Court Clerk's Office ("OCCCO") was a county

office located in Oklahoma City, Oklahoma, that maintained records and provided fiscal

services for the Oklahoma County District Court.  The OCCCO accepted payment of bail

for criminal defendants arrested in Oklahoma County, which served as security required

by the court for the release of a criminal defendant who must appear in court at a future hearing or trial. The amount of bail that a criminal defendant had to post to secure release was set by the court. To secure release of a criminal defendant from custody, a person could pay the court-ordered bail amount at the Oklahoma County Jail or to the OCCCO in cash or with a cashier's check. The OCCCO or the Oklahoma County Jail recorded the name of the individual who posted bail for a criminal defendant. If a defendant failed to appear in court as required, the court could declare the bail forfeited. The OCCCO kept the forfeited bail funds and distributed them as required by state law. If a criminal defendant appeared in court as required throughout the criminal case, the court issued an order to release the bail. The OCCCO released the bail funds to the person who posted the bail or their designee unless the court ordered the bail to be returned to another party. The OCCCO returned bail funds via check drawn on the OCCCO's bank account at JPMorgan Chase Bank, NA.

3.      The Cleveland County Court Clerk's Office ("CCCCO") was a county office located in Norman, Oklahoma, that maintained records and provided fiscal services for the Cleveland County District Court. The CCCCO functioned similarly to the OCCCO. If a criminal defendant appeared in court as required throughout a criminal case, the court issued an order to release the bail. The CCCCO released bail funds to the person who posted the bail or their designee unless the court ordered the bail to be returned to another party. The CCCCO returned bail funds via check drawn on the CCCCO's bank account at JPMorgan Chase Bank, NA.

4.    Equity International LLC ("Equity International") was a domestic limited liability company, which was registered with the Oklahoma Secretary of State on or about September 13, 2022.  **DICKERSON** was the registered agent and sole member/manager of Equity International.

### Relevant Financial Accounts

5.    City National Bank & Trust of Lawton ("CNB") was a financial institution headquartered in Lawton, Oklahoma, in the Western District of Oklahoma, the accounts and deposits of which were insured by the Federal Deposit Insurance Corporation ("FDIC").

a.    **DICKERSON** was an account owner on the following accounts at CNB:

| CNB Account | Opening Date | Joint Owner | Account Type |
|---|---|---|---|
| Ending in *0258 ("**DICKERSON**'s 0258 checking account") | 11/05/2018 | None | Checking |
| Ending in *2516 ("**DICKERSON**'s 2516 savings account") | 11/23/2018 | None | Savings |
| Ending in *4100 ("**DICKERSON**'s 4100 checking account") | 08/11/2021 | A.J.A. (added 11/17/2021) | Checking |
| Ending in *4111 ("**DICKERSON**'s 4111 checking account") | 08/11/2021 | I.N.D. (added 06/06/2024) | Checking |
| Ending in *8773 ("**DICKERSON**'s 8773 savings account") | 08/11/2021 | I.N.D. (added 06/06/2024) | Savings |

b.    **DICKERSON** was an authorized signer on the following accounts

at CNB:

| CNB Account | Opening Date | Account Number | Account Type |
|---|---|---|---|
| Alliance for Global Justice Black Lives Matter-Oklahoma City Project ("BLMOKC 9567 account") | 07/06/2020 | Ending in *9567 | Non-Profit Checking |
| Alliance for Global Justice Black Lives Matter-Oklahoma City Project ("BLMOKC 3550 checking account") | 08/03/2021 | Ending in *3550 | Non-Profit Checking |

6.    PayPal Holdings, Inc. ("PayPal") was a payment processing company

headquartered in San Jose, California, that enabled users to send and receive money. A

PayPal user could link a PayPal account to a credit card, debit card, or bank account, and

use the account to electronically send money, receive money, and shop online.

a.    **DICKERSON** was a registered user on the following PayPal

accounts:

| PayPal Account | Approximate Creation Date | Account Number |
|---|---|---|
| BLMOKC PayPal Account | 07/18/2016 | Ending in *3655 |
| **DICKERSON**'s PayPal Account ("**DICKERSON**'s 2724 PayPal account) | 06/30/2009 | Ending in *2724 |
| **DICKERSON**'s PayPal Account ("**DICKERSON**'s 8151 PayPal account) | 03/31/2018 | Ending in *8151 |

7.    Cash App was a non-bank financial services platform operated by Block,

Inc. (formerly known as Square, Inc.) headquartered in Oakland, California. Cash App

enabled users to send, receive, and store money. A Cash App user could link a Cash App

account to a credit card, debit card, or bank account, and use the account to electronically

send money, receive money, and shop online.

**Relevant Social Justice Organizations**

8.     The Alliance for Global Justice ("AFGJ") was a non-profit organization headquartered in Tucson, Arizona, whose mission was to achieve social change and economic justice by providing support to other grassroots movements.  AFGJ was a tax-exempt organization under Section 501(c)(3) of the Internal Revenue Code.  AFGJ offered fiscal sponsorship to other non-profit organizations (known as "projects") that aligned with AFGJ's mission.  When AFGJ served as the fiscal sponsor for a project, donations to the project made through AFGJ were fully tax-deductible.  AFGJ also served as a fiduciary for its sponsored projects by, for example, hiring employees or independent contractors, processing payroll, accepting donations and grants, and maintaining financial statements.

9.     The Tides Center was a non-profit organization headquartered in San Francisco, California, which, among other things, provided fiscal sponsorship and offered grants to support social justice causes.

10.     The Community Justice Exchange ("CJE") was a project of the Tides Center.  CJE managed the National Bail Fund Network, which was made up of community bail and bond funds across the country and was dedicated to ending pretrial and immigration detention.  CJE also extended grants to community bail funds to assist with the payment of pretrial bail for defendants who might otherwise remain incarcerated pending trial or resolution of a criminal case.

11.     The Massachusetts Bail Fund ("MBF"), headquartered in Dorchester, Massachusetts, operated a bail fund to pay pretrial bail and secure release from pretrial

incarceration for those who could not afford to pay bail themselves.  MBF also extended grants to community bail funds across the United States.

12.     The Minnesota Freedom Fund ("MFF"), headquartered in Minneapolis, Minnesota, operated a bail fund to pay pretrial bail and immigration bonds for those who otherwise could not afford to post bail or bonds for themselves. MFF also extended grants to community bail funds across the United States.

## Background on Black Lives Matter Oklahoma Assn.

13.     On or about July 20, 2016, Black Lives Matter Oklahoma Foundation Society (the "BLM Oklahoma Foundation") was registered as a domestic not-for-profit with the Oklahoma Secretary of State.  The listed purpose of the organization was "[t]o promote racial equity, provide training [and] education for community advocates, and partner with other agencies to reduce injustices from local [and] state law enforcement agencies."  "Black Lives Matter OKC" was listed as one of the tradenames associated with the BLM Oklahoma Foundation.  On or about March 29, 2024, an amended certificate of incorporation was filed with Oklahoma Secretary of State changing the organization's legal name to "Black Lives Matter Oklahoma Assn."  Although registered as a domestic not-for-profit with the Oklahoma Secretary of State, the BLM Oklahoma Foundation, Black Lives Matter OKC, and Black Lives Matter Oklahoma Assn. (collectively "BLMOKC") were not listed as tax exempt organizations with the Internal Revenue Service.

14.    Since at least July 2016, **DICKERSON** served as the Executive Director and registered agent of BLMOKC. **DICKERSON** represented herself to be an unpaid volunteer for BLMOKC.

15.    On or about June 10, 2020, **DICKERSON** signed a Fiscal Sponsorship Agreement with AFGJ on behalf of BLMOKC. The Fiscal Sponsorship Agreement outlined the terms under which AFGJ would act as a fiscal sponsor for BLMOKC. The primary purpose of the agreement was to allow BLMOKC donors to receive legal tax deductions through AFGJ's status as a public charity under the Internal Revenue Code (26 U.S.C. §§ 501(c)(3), 509(a)(1), and 170(b)(1)(A)(vi)). Under the terms of the Fiscal Sponsorship Agreement:

a.    AFGJ agreed to accept grants, contributions, and gifts on behalf of BLMOKC and, after deducting an administrative fee, made those funds available to BLMOKC in a segregated account known as the "Project Fund."

b.    BLMOKC agreed "to use the Project Fund solely for legitimate expenses in connection with the Project and as allowed under Section 501(c)(3) of the Code, and to account fully to AFGJ for the disbursement of all funds received from it as requested."

c.    BLMOKC agreed to complete an annual report that provided AFGJ with a narrative of how BLMOKC used the Project Fund during the applicable year and confirm the balance of the Project Fund at the end of each year;

d.    BLMOKC agreed it would not acquire any real property without AFGJ's consent;

      e.     AFGJ agreed that all grants, charitable contributions, and gifts received on behalf of BLMOKC would be reported as contributions to AFGJ as required by law; and

      f.     For grants made to AFGJ on behalf of BLMOKC, BLMOKC agreed to file and accept responsibility for all grant reports required by foundations or other donors.

16.    Beginning by at least late spring and early summer of 2020, BLMOKC raised funds to support its social justice mission and to post bail on behalf of individuals arrested during protests arising after the death of George Floyd. BLMOKC's fundraising took several forms, including online donations through its website and solicitations on its social media accounts. Donations made to BLMOKC through its website were directed to AFGJ as BLMOKC's fiscal sponsor. Donations made to BLMOKC through its social media accounts were directed to BLMOKC's PayPal and Cash App accounts, but also occasionally to **DICKERSON**'s personal PayPal account. In total, BLMOKC raised more than $250,000.00 through online donations and social media accounts.

17.    Beginning in or about late spring and early summer 2020, BLMOKC also solicited grant funds from social justice organizations, including CJE, MBF, MFF, and other national bail funds, to post bail for individuals arrested in Oklahoma in connection with protests. BLMOKC continued to receive grant funds from social justice organizations through at least May 2024.

**Grants Awarded to BLMOKC by Social Justice Organizations**

18.    On or about the dates set forth below, CJE extended the following grants to

AFGJ for the benefit of BLMOKC:

| Grant Date | Grant Amount | Payment Method |
|---|---|---|
| 07/09/2020 | $3,700,000.00 | Wire |
| 07/28/2020 | $1,000,000.00 | Wire |

The purpose of the grants was "to support Black Lives Matter – Oklahoma City in

posting pretrial bail for individuals arrested in connection with non-violent protests for

racial justice." CJE notified AFGJ that, by accepting payment, AFGJ agreed to all of the

terms and conditions of the grant(s). The conditions of the grant(s) provided that any bail

payments returned to BLMOKC "must be used to support charitable or educational work,

within the meaning of Section 501(c)(3) of the Internal Revenue Code, furthering racial

justice and/or ending mass incarceration." The grant(s) further provided that by July 9,

2021, BLMOKC had to report on how funds returned from bail payments were used or

would be used, even if BLMOKC ceased to exist, and that any portion of the grant funds

not used for their stated purpose must be repaid to the Tides Center.

19.    On or about July 8, 2020, MFF extended a $350,000.00 grant to AFGJ as

the fiscal sponsor for BLMOKC "to support the payment of bail for protesters arrested

related to BLM protests in Oklahoma City, OK from May 30 – June 2, 2020." The grant

terms specified that "[a]t the time that bail payments are returned to [AFGJ] following

individuals' compliance with applicable bail terms and/or resolution of their case, the full

amount of the grant shall be remitted by [AFGJ] back to MFF." On or about April 28,

2022, MFF amended the grant terms and waived the requirement that BLMOKC return

the funds to AFGJ and ultimately to MFF.  MFF specified that "[a]ll remaining funds

held by AFGJ on behalf of [BLMOKC] are to be used by [BLMOKC] in their efforts to

pay bail for individuals in Oklahoma City that may not be able to pay for themselves."

20.    On or about June 30, 2020, MBF extended a $300,000.00 grant directly to

BLMOKC "to support bails paid for community members related to the uprising of

summer 2020."  MBF intended any bail funds returned to BLMOKC "to a be a donation

to [BLMOKC] to further their work."

21.    In total, between June 30, 2020, and July 28, 2020, MBF, CJE, and MFF

paid at least $5,350,000.00 for the benefit of BLMOKC.

## COUNTS 1 – 20
### (Wire Fraud)

22.    The Federal Grand Jury incorporates paragraphs 1- 21 by reference.

### The Scheme to Defraud

23.    Beginning no later than June 2020, and continuing through at least October

2025, in the Western District of Oklahoma and elsewhere, **DICKERSON** knowingly

devised, intended to devise, and executed a scheme and artifice to defraud BLMOKC and

its donors in a material manner and to obtain money from BLMOKC and its donors by

means of materially false and fraudulent pretenses, representations, and promises.  In

particular, **DICKERSON** diverted funds donated for the benefit of BLMOKC and its

social justice causes to her personal benefit and then falsely stated in reports to AFGJ that

all funds received by BLMOKC were used for tax-exempt purposes.  **DICKERSON**

further, in contravention of the terms and conditions of the grants awarded by CJE, MBF,

MFF, and other bail funds, caused returned bail funds belonging to BLMOKC to be transferred to her personal financial accounts, rather than to financial accounts owned by BLMOKC. **DICKERSON** thereafter used those funds for the benefit of herself, her children, and her associates, including by purchasing real estate and a personal vehicle and by paying for recreational travel, retail shopping, and food delivery services.

**Manner and Means**

24.    It was part of the scheme to defraud that:

a.    Beginning in at least late spring and early summer 2020, **DICKERSON** and BLMOKC used BLMOKC's website and social media accounts to raise money for bail and for the organization's general support. **DICKERSON** directed these donations to BLMOKC's PayPal and Cash App accounts, and occasionally to **DICKERSON**'s personal PayPal account.

b.    Between on or about June 14, 2020, and on or about July 3, 2020, **DICKERSON** transferred approximately $32,277.70 from BLMOKC's PayPal account to **DICKERSON**'s 2724 PayPal account. **DICKERSON** used the funds in **DICKERSON**'s 2724 PayPal account on personal expenses, including retail purchases, travel, food, and furniture.

c.    Between on or about June 14, 2020, and on or about July 3, 2020, **DICKERSON** transferred approximately $79,011.92 from BLMOKC's PayPal account to **DICKERSON**'s 8151 PayPal account. **DICKERSON** used the funds in **DICKERSON**'s 8151 PayPal account for personal expenses, including retail purchases, travel, food, and furniture. On June 25, 2020, **DICKERSON** also transferred

approximately $6,500.00 from **DICKERSON**'s 8151 PayPal account to **DICKERSON**'s 0258 checking account.

        d.      Between on or about June 23, 2020, and on or about July 26, 2020, **DICKERSON** transferred approximately $39,000.00 from BLMOKC's PayPal account to **DICKERSON**'s 0258 checking account.

        e.      Prior to transfers originating from BLMOKC's PayPal account, **DICKERSON**'s 0258 checking account had a balance of $545.58.

        f.      Between about June 25, 2020, and September 10, 2025, **DICKERSON** transferred more than $120,000.00 from her personal bank accounts (e.g., **DICKERSON**'s 0258 checking account, **DICKERSON**'s 4100 checking account, and **DICKERSON**'s 4111 checking account) to her personal Cash App account and Cash App accounts belonging to her relatives and associates. These funds were derived from donations made for the benefit of BLMOKC and returned bail funds. **DICKERSON** used funds in her personal Cash App account to make retail purchases, send money to relatives and associates, and for personal grooming expenses.

        g.      Beginning in or about June 2020, BLMOKC and **DICKERSON** solicited donations from national bail funds, including CJE, MBF, MFF, and others, for the purpose of posting pretrial bail for individuals arrested in connection with non-violent protests for racial justice in Oklahoma.

        h.      On or about June 30, 2020, MBF wired $300,000.00 in grant funds for the benefit of BLMOKC directly to **DICKERSON**'s 0258 checking account.

i.      CJE and MFF awarded at least $5,050,000.00 in grants to AFGJ for the benefit of BLMOKC between June 30, 2020, and July 28, 2020. The national bail funds required BLMOKC to use the grant funds to post pretrial bail for individuals arrested in Oklahoma, and to use returned funds either for a revolving bail fund or to support BLMOKC's charitable or educational work, within the meaning of Section 501(c)(3) of the Internal Revenue Code, furthering racial justice and/or ending mass incarceration.

j.      Prior to July 6, 2020, BLMOKC did not have its own bank account. In order to quickly secure pretrial release for individuals arrested in protests, BLMOKC asked AFGJ to expedite the transfer of grant funds received from national bail funds by wiring the funds (less AFGJ's administrative fee) to **DICKERSON**'s 0258 checking account. Between about July 1, 2020, through about July 10, 2020, AFGJ transferred a total of $3,520,000.00 to **DICKERSON**'s 0258 checking account.

k.      On or about July 2, 2020, **DICKERSON** purchased $800,000.00 in cashier's checks, drawn on **DICKERSON**'s 0258 checking account, to post bail on behalf of three criminal defendants arrested in Oklahoma County, Oklahoma.

l.      On or about July 6, 2020, BLMOKC established a separate account at CNB—the BLMOKC 9567 account—to serve as BLMOKC's bank account and a revolving bail fund. **DICKERSON** was the only authorized signer on the account.

m.      On or about July 7 and 8, 2020, **DICKERSON** transferred $2,901,000.00 from **DICKERSON**'s 0258 checking account to the BLMOKC 9567 account. After these transfers, between July 7, 2020, and July 8, 2020, **DICKERSON**

13

purchased $2,700,000.00 in cashier's checks, drawn on the BLMOKC 9567 account, which were made payable to the Oklahoma County Court Clerk to pay eleven cash bails for nine individual defendants in Oklahoma County.

      n.     On or about July 24, 2020, AFGJ wired an additional $1,000,000.00 received from a national bail fund to the BLMOKC 9567 account.

      o.     On or about July 24, 2020, **DICKERSON** used funds from the BLMOKC 9567 account to post bail for defendant I.A.O. in Oklahoma County for two criminal cases in the aggregate amount of $1,000,000.00.

      p.     In total, **DICKERSON** received $4,820,000.00 into **DICKERSON**'s 0258 checking account and the BLMOKC 9567 account, of which she posted approximately $4,500,000.00 in bail payments for Oklahoma County criminal defendants in July 2020. These funds were derived from grants awarded to BLMOKC from national bail funds and from funds donated to BLMOKC through solicitations on its social media accounts. One million dollars ($1,000,000.00) was forfeited (due to criminal defendant I.A.O.'s failure to appear in two criminal cases in Oklahoma County). Oklahoma County returned the remaining cash bail payments (totaling $3,500,000.00 for bonds posted in July 2020) via check.

      q.     In some instances, **DICKERSON** deposited returned bail checks into BLMOKC's bank accounts. In many instances, however, **DICKERSON** deposited returned bail checks into her personal bank accounts. For example:

             i.     Between November 5, 2020, and May 24, 2021, **DICKERSON** deposited a total of $2,200,000.00 of returned bail checks into **DICKERSON**'s 0258 checking account;

14

ii.   Between January 11, 2021, and March 3, 2021, **DICKERSON** deposited a total of $300,000.00 of returned bail checks into **DICKERSON**'s 2516 savings account;

iii.  Between June 20, 2023, and July 31, 2025, **DICKERSON** deposited a total of $585,000.00 of returned bail checks into **DICKERSON**'s 4100 checking account;

iv.   On January 3, 2024, **DICKERSON** deposited a $5,000.00 returned bail check into **DICKERSON**'s 4111 checking account;

v.    Between June 17, 2022, and October 23, 2024, **DICKERSON** deposited $60,000.00 of returned bail checks into **DICKERSON**'s 8773 savings account.

r.    In total, **DICKERSON** deposited returned bail checks worth at least $3,150,000.00 into her personal bank accounts at CNB.

s.    **DICKERSON** used funds donated to BLMOKC and returned bail payments for her personal benefit, and for the benefit of her children and associates.

t.    For example, between July 27, 2020, and July 29, 2020, **DICKERSON** withdrew a total of $42,000.00 in cash from **DICKERSON**'s 0258 checking account.  On or about July 27, 2020, **DICKERSON** also used **DICKERSON**'s 0258 checking account to purchase twelve $1,000.00 money orders.  **DICKERSON** would not have had sufficient funds in **DICKERSON**'s 0258 checking account to make these withdrawals but for the funds she received for the benefit of BLMOKC.  On or about August 15, 2020, **DICKERSON** used $38,749.00 in cash and three $1,000.00 money orders to buy a 2021 Hyundai Palisade (VIN No. KM8R34HE2MU177505) for a purchase price of $41,749.00.  **DICKERSON** titled the vehicle in her own name, not BLMOKC.

u.      **DICKERSON** further used proceeds from the scheme to defraud to fund recreational travel for herself and her associates to the Dominican Republic in July 2021, and to Jamaica in December 2021 and January 2022.

v.      **DICKERSON** further used proceeds from the scheme to defraud for retail shopping, including tens of thousands of dollars spent at each of the following retailers: Nordstrom/Nordstrom Rack, Macy's, Amazon, Best Buy, Bob Mills Furniture, and others.

w.      **DICKERSON** further used proceeds from the scheme to defraud for personal food and grocery deliveries (*i.e.*, Doordash and Instacart) to herself and her children, totaling at least $50,000.00.

x.      **DICKERSON** also used proceeds from the scheme to defraud to purchase real properties in her personal name, including:

| Date on Deed | Property Address | Approximate Purchase Price | Owner Listed on Deed |
|---|---|---|---|
| 03/04/2021 | 1106 NE 22nd Street, Oklahoma City, Oklahoma 73111 1108 NE 22nd Street, Oklahoma City, Oklahoma 73111 1117 NE 22nd Street, Oklahoma City, Oklahoma 73111 1120 NE 22nd Street, Oklahoma City, Oklahoma 73111; and 1 Lot with Unknown Address (collectively "the Church Property") | $278,000.00 | "Tashella Dickerson" |
| 07/08/2022 | 1209 Staton Drive Oklahoma City, Oklahoma 73111 | $139,000.00 | "T. Dickerson" |
| 10/19/2022 | 1907 NE Grand Boulevard Oklahoma City, Oklahoma 73111 | $121,000.00 | "Tashella S. Dickerson" |

16

y.    **DICKERSON** also used proceeds from the scheme to defraud to purchase real properties in the name of Equity International, including:

| Dates on Deed(s) | Property Address | Approximate Purchase Price |
|---|---|---|
| 12/13/2022 – 12/14/2022 | 1901 NE 63rd Street Oklahoma City, Oklahoma 73111 | $231,000.00 |
| 03/29/2024 | 1904 NE 53rd Street Oklahoma City, Oklahoma 73111 | $119,000.00 |
| 07/03/2024 | 3121 NE 13th Street Oklahoma City, Oklahoma 73117 | $87,000.00 |

z.    **DICKERSON** concealed the scope and nature of her embezzlement from BLMOKC by falsely reporting to AFGJ that she used the funds only for the benefit of BLMOKC.

aa.    On or about May 14, 2021, **DICKERSON** used the internet to electronically submit BLMOKC's Annual Financial Report to AFGJ covering the time period April 1, 2020, through March 31, 2021. **DICKERSON** reported total expenses for this period of $4,521,215.00. **DICKERSON** falsely certified that "all money received from AFGJ during the period specified above was expended for tax-exempt purposes in accordance with the 501(c)(3) federal tax code." **DICKERSON** failed to disclose that between November 5, 2020, and March 3, 2021, she deposited $1,750,000.00 of returned bail checks into **DICKERSON**'s personal accounts, and she thereafter used money received from AFGJ for non-tax-exempt purposes, including:

i.    Purchasing a 2021 Hyundai Palisade titled in her name; and

ii.    Purchasing tens of thousands of dollars in retail goods and food deliveries for her personal benefit; and

      iii.    Purchasing the Church Property on or about March 4, 2021. The Church Property was intended to be used by BLMOKC as a community center, but **DICKERSON** placed title to the property in her own name.

    bb.    On or about June 30, 2022, **DICKERSON** used the internet to electronically submit BLMOKC's Annual Financial Report to AFGJ covering the time period April 1, 2021, through March 31, 2022. **DICKERSON** reported total expenses for this period of $83,785.01. She certified that "all money received from AFGJ during the relevant period . . . was expended for tax-exempt purposes in accordance with the 501(c)(3) federal tax code." **DICKERSON** failed to disclose that on May 24, 2021, she deposited $750,000.00 of returned bail checks into **DICKERSON**'s personal accounts, and she thereafter used money received from AFGJ for non-tax-exempt purposes, including:

      i.    Purchasing tens of thousands of dollars in retail goods and food deliveries for her personal benefit; and

      ii.    Paying for recreational travel for herself and her associates to the Dominican Republic in July 2021, and to Jamaica in December 2021 and January 2022.

### Wires in Furtherance of the Scheme

    25.    On or about the dates set forth below, in the Western District of Oklahoma and elsewhere,

---------------------------------**TASHELLA SHERI AMORE DICKERSON,**
              **a/k/a Sheri Dickerson,**
              **a/k/a Sheri Amore,**
              **a/k/a Rev. T. Sheri Dickerson,** ------------------------------

for the purpose of executing the above-described scheme to defraud in a material manner and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, and with intent to defraud, knowingly caused signals to be transmitted by means of wire communications in interstate commerce. In particular, **DICKERSON** caused interstate wires to be transmitted by depositing returned bail checks from the OCCCO and the CCCCO into **DICKERSON**'s accounts at CNB as follows:

| Count | Approximate Date of Deposit | Check Number | Check Drawer | Depository Account | Amount |
|-------|------------------------------|--------------|--------------|--------------------|--------|
| 1 | 01/11/2021 | 429525 | OCCCO | **DICKERSON**'s 2516 savings account | $50,000.00 |
| 2 | 03/03/2021 | 430153 | OCCCO | **DICKERSON**'s 0258 checking account | $400,000.00 |
| 3 | 03/03/2021 | 430155 | OCCCO | **DICKERSON**'s 0258 checking account | $250,000.00 |
| 4 | 03/03/2021 | 430154 | OCCCO | **DICKERSON**'s 2516 savings account | $250,000.00 |
| 5 | 05/24/2021 | 430809 | OCCCO | **DICKERSON**'s 0258 checking account | $500,000.00 |
| 6 | 05/24/2021 | 430810 | OCCCO | **DICKERSON**'s 0258 checking account | $250,000.00 |
| 7 | 06/17/2022 | 433821 | OCCCO | **DICKERSON**'s 8773 savings account | $15,000.00 |
| 8 | 06/20/2023 | 438522 | OCCCO | **DICKERSON**'s 4100 checking account | $35,000.00 |
| 9 | 10/25/2023 | 440174 | OCCCO | **DICKERSON**'s 4100 checking account | $300,000.00 |
| 10 | 10/25/2023 | 440175 | OCCCO | **DICKERSON**'s 4100 checking account | $5,000.00 |
| 11 | 01/03/2024 | 440554 | OCCCO | **DICKERSON**'s 4111 checking account | $5,000.00 |
| 12 | 01/03/2024 | 440576 | OCCCO | **DICKERSON**'s 4100 checking account | $5,000.00 |

| Count | Approximate Date of Deposit | Check Number | Check Drawer | Depository Account | Amount |
|---|---|---|---|---|---|
| **13** | 05/06/2024 | 376792 | CCCCO | **DICKERSON**'s 8773 savings account | $20,000.00 |
| **14** | 10/23/2024 | 443741 | OCCCO | **DICKERSON**'s 4100 checking account | $150,000.00 |
| **15** | 10/23/2024 | 443507 | OCCCO | **DICKERSON**'s 8773 savings account | $25,000.00 |
| **16** | 03/03/2025 | 444850 | OCCCO | **DICKERSON**'s 4100 checking account | $50,000.00 |
| **17** | 07/31/2025 | 445136 | OCCCO | **DICKERSON**'s 4100 checking account | $20,000.00 |
| **18** | 07/31/2025 | 445138 | OCCCO | **DICKERSON**'s 4100 checking account | $20,000.00 |

26.    On or about the dates set forth below, in the Western District of Oklahoma

and elsewhere,



--------------------------------**TASHELLA SHERI AMORE DICKERSON,**
                    **a/k/a Sheri Dickerson,**
                    **a/k/a Sheri Amore,**
                    **a/k/a Rev. T. Sheri Dickerson,** -----------------------------

for the purpose of executing the above-described scheme to defraud in a material manner

and to obtain money by means of materially false and fraudulent pretenses,

representations, and promises, and with intent to defraud, knowingly caused signals to be

transmitted by means of wire communications in interstate commerce.  In particular,

**DICKERSON** electronically submitted Annual Financial Reports for Fiscal Year to

AFGJ containing the materially false and fraudulent statement that all money received

from AFGJ during the relevant period was expended for tax-exempt purposes, as follows:

| Count | Approximate Date of Submission | Document Name | Time Period Covered by Report |
|:---:|:---:|:---:|:---:|
| **19** | 05/14/2021 | Annual Financial Report for Fiscal Year | 04/01/2020 – 03/31/2021 |
| **20** | 06/30/2022 | Annual Financial Report for Fiscal Year | 04/01/2021 – 03/31/2022 |

All in violation of Title 18, United States Code, Section 1343.

## <u>COUNT 21</u>
### (Money Laundering)

27.     The Federal Grand Jury incorporates paragraphs 1 – 26 by reference.

28.     On or about July 8, 2022, in the Western District of Oklahoma,

------------------------------------**TASHELLA SHERI AMORE DICKERSON,**
**a/k/a Sheri Dickerson,**
**a/k/a Sheri Amore,**
**a/k/a Rev. T. Sheri Dickerson,** ------------------------------

knowingly engaged in a monetary transaction by, through, and to a financial institution,

affecting interstate commerce, in criminally derived property of a value greater than

$10,000.00.  In particular, **DICKERSON** caused a wire transaction in the amount of

$139,046.22 to be sent from **DICKERSON**'s 8773 savings account at CNB to Apex

Title and Closing Services after these funds had been derived from wire fraud, a specified

unlawful activity pursuant to Title 18, United States Code, Sections 1956(c)(7)(A) and

1961(1).  **DICKERSON** used these funds to purchase a real property located at 1209

Staton Drive, Oklahoma City, Oklahoma.

All in violation of Title 18, United States Code, Section 1957(a).

### COUNT 22
### (Money Laundering)

29.    The Federal Grand Jury incorporates paragraphs 1 – 26 by reference.

30.    On or about October 18, 2022, in the Western District of Oklahoma,

--------------------------------**TASHELLA SHERI AMORE DICKERSON,**
                               **a/k/a Sheri Dickerson,**
                               **a/k/a Sheri Amore,**
                               **a/k/a Rev. T. Sheri Dickerson,** -----------------------------

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00.  In particular, **DICKERSON** caused a wire transaction in the amount of $117,584.09 to be sent from **DICKERSON**'s 8773 savings account at CNB to Oklahoma Family Title after these funds had been derived from wire fraud, a specified unlawful activity pursuant to Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1). **DICKERSON** used these funds to purchase a real property located at 1907 NE Grand Boulevard, Oklahoma City, Oklahoma.

All in violation of Title 18, United States Code, Section 1957(a).

### COUNT 23
### (Money Laundering)

31.    The Federal Grand Jury incorporates paragraphs 1 – 26 by reference.

32.    On or about December 15, 2022, in the Western District of Oklahoma,

--------------------------------**TASHELLA SHERI AMORE DICKERSON,**
                               **a/k/a Sheri Dickerson,**
                               **a/k/a Sheri Amore,**
                               **a/k/a Rev. T. Sheri Dickerson,** -----------------------------

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00.  In particular, **DICKERSON** caused a wire transaction in the amount of $232,866.95 to be sent from **DICKERSON**'s 8773 savings account at CNB to Stewart Title of Oklahoma after these funds had been derived from wire fraud, a specified unlawful activity pursuant to Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1).  **DICKERSON** used these funds to purchase a real property located at 1901 NE 63rd Street, Oklahoma City, Oklahoma.  **DICKERSON** placed title for this property in the name of Equity International, an entity she controls.

All in violation of Title 18, United States Code, Section 1957(a).

## COUNT 24
### (Money Laundering)

33.    The Federal Grand Jury incorporates paragraphs 1 – 26 by reference.

34.    On or about April 1, 2024, in the Western District of Oklahoma,

----------------------------------**TASHELLA SHERI AMORE DICKERSON,**
                              **a/k/a Sheri Dickerson,**
                              **a/k/a Sheri Amore,**
                              **a/k/a Rev. T. Sheri Dickerson**, -----------------------------

knowingly engaged in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000.00.  In particular, **DICKERSON** caused a wire transaction in the amount of $118,604.35 to be sent from **DICKERSON**'s 4100 checking account at CNB to Milestone Title & Escrow after these funds had been derived from wire fraud, a specified unlawful activity pursuant to Title 18, United States Code, Sections 1956(c)(7)(A) and

1961(1).  **DICKERSON** used these funds to purchase a real property located at 1904 NE

53rd Street, Oklahoma City, Oklahoma.  **DICKERSON** placed title for this property in

the name of Equity International, an entity she controls.

     All in violation of Title 18, United States Code, Section 1957(a).

### COUNT 25
**(Money Laundering)**

35.     The Federal Grand Jury incorporates paragraphs 1 – 26 by reference.

36.     On or about July 3, 2024, in the Western District of Oklahoma,

--------------------------------**TASHELLA SHERI AMORE DICKERSON,**
                        **a/k/a Sheri Dickerson,**
                        **a/k/a Sheri Amore,**
                        **a/k/a Rev. T. Sheri Dickerson,** ----------------------------

knowingly engaged in a monetary transaction by, through, and to a financial institution,

affecting interstate commerce, in criminally derived property of a value greater than

$10,000.00.  In particular, **DICKERSON** caused a wire transaction in the amount of

$88,108.89 to be sent from **DICKERSON**'s 8773 savings account at CNB to Milestone

Title & Escrow after these funds had been derived from wire fraud, a specified unlawful

activity pursuant to Title 18, United States Code, Sections 1956(c)(7)(A) and 1961(1).

**DICKERSON** used these funds to purchase a real property located at 3121 NE 13th

Street, Oklahoma City, Oklahoma.  **DICKERSON** placed title for this property in the

name of Equity International, an entity she controls.

     All in violation of Title 18, United States Code, Section 1957(a).

## FORFEITURE

The allegations contained in this Indictment are hereby re-alleged and incorporated for the purpose of alleging forfeiture.

Upon conviction of any of the offenses alleged in Counts 1 through 20 of this Indictment, **TASHELLA SHERI AMORE DICKERSON** shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the offense(s).

Upon conviction of any of the offenses alleged in Counts 21 through 25 of this Indictment, **TASHELLA SHERI AMORE DICKERSON** shall forfeit to the United States any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such offense(s).

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), **TASHELLA SHERI AMORE DICKERSON** shall forfeit substitute property, up to the value of the property described above, if, by any act or omission of the defendants, the property described above, or any portion of that property, cannot be located upon the exercise of due diligence; has been transferred or sold to or deposited with a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty.

The property subject to forfeiture includes, but is not limited to:

1.    a money judgment entered against **TASHELLA SHERI AMORE DICKERSON** representing the amount of proceeds obtained as a

result of the commission of the offense(s) in an amount to be determined;

2.    real properties located at:

a.    1120 NE 22nd Street, Oklahoma City, Oklahoma 73111 – Church, Commercial #R030830550;

b.    Unknown address – Vacant Land, Residential #R030756600;

c.    1108 NE 22nd Street, Oklahoma City, Oklahoma 73111 – Parking Lot, Commercial # R030831100;

d.    1106 NE 22nd Street, Oklahoma City, Oklahoma 73111 – Vacant Land, Residential #R030831600; and

e.    1117 NE 22nd Street, Oklahoma City, Oklahoma 73111 – Vacant Land, Residential #R030756050;

collectively, legally described as:

Lots One (1), Two (2), Three (3), Four (4), Five (5), Six (6), Seven (7), Eight (8), and Nine (9), in Block Eight (8), of MERIPOSA being a subdivision of Lots #8 and #10 of the Prospect Heights Addition, Oklahoma County, Oklahoma, according to the recorded plat thereof.

and

Lots Twenty-nine (29), Thirty (30), Thirty-one (31) and Thirty-two (32), in Block Seven (7), of SUNRISE ADDITION, being a sub-division of Lot Seven (7), Prospect Heights Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof;

3.    real property located at 1209 Staton Drive, Oklahoma City, Oklahoma 73111-5045, legally described as Lot Fifteen (15) of Block Sixteen (16) in PARK ESTATES of Oklahoma County, Oklahoma, according to the recorded Plat thereof. Together with all the improvements thereon and the appurtenances thereunto belonging and warrant the title to the same;

4.    real property located at 1901 NE 63rd Street, Oklahoma City, Oklahoma 73111-7909, legally described as A part of the Southeast

26

Quarter (SE/4) of Section Two (2), Township Twelve (12) North, Range Three (3) West of the Indian Meridian, Oklahoma County, Oklahoma, being more particularly described as follows: Beginning at a point 33 feet North and 488.5 feet West from the Southeast Corner of the Southeast Quarter (SE/4); thence North 170 feet; thence West 146.5 feet; thence South 170 feet; thence East 146.5 feet to the point or place of beginning. Together with all the improvements thereon and the appurtenances thereunto belonging and warrant the title to the same;

5.  real property located at 1904 NE 53rd Street, Oklahoma City, Oklahoma 73111-7014, legally described as Lot Five (5) in Block Ten (10), of PARK ESTATES 11th ADDITION, BLOCKS 9-16, INCLUSIVE, an Addition to Oklahoma City, Oklahoma County, Oklahoma, according to the record plat thereof. Together with all the improvements thereon and the appurtenances thereunto belonging and warrant the title to the same;

6.  real property located at 1907 NE Grand Boulevard, Oklahoma City, Oklahoma 73111-1825, legally described as Lots SEVEN (7) and EIGHT (8), of Block FIVE (5), in EDWARDS HEIGHTS RESUBDIVISION, to Oklahoma City, Oklahoma County, Oklahoma, according to the recorded plat thereof. Together with all the improvements thereon and the appurtenances thereunto belonging and warrant the title to the same;

7.  real property located at 3121 NE 13th Street, Oklahoma City, Oklahoma 73117-6266, legally described as All of Lot Eighteen (18), in Block Sixteen (16), in GARDEN OAKS ADDITION, to the City of Oklahoma City, County of Oklahoma, State of Oklahoma, according to the recorded Plat thereof. Together with all the improvements thereon and the appurtenances thereunto belonging and warrant the title to the same; and

8.  a 2021 Hyundai Palisade (VIN: KM8R34HE2MU177505).

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(1), and Title 28, United States Code, Section 2461.

A TRUE BILL:

FOREPERSON OF THE GRAND JURY

ROBERT J. TROESTER
United States Attorney

JESSICA L. PERRY
MATT DILLON
Assistant United States Attorneys