## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | | |
|---|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | | |
| | ) | | |
| **Plaintiff,** | ) | | |
| | ) | | |
| **vs.** | ) | No. | **CR-25-499-JD** |
| | ) | | |
| **TASHELLA SHERI AMORE** | ) | | |
| **DICKERSON,** | ) | | |
|    **a/k/a Sheri Dickerson,** | ) | | |
|    **a/k/a Sheri Amore,** | ) | | |
|    **a/k/a Rev. T. Sheri Dickerson,** | ) | | |
| | ) | | |
| **Defendant.** | ) | | |

## UNITED STATES' MOTION FOR PRETRIAL CONFERENCE PURSUANT TO CLASSIFIED INFORMATION PROCEDURES ACT, 18 U.S.C. APP. III, (CIPA) SECTION 2 AND MOTION TO DESIGNATE A CLASSIFIED INFORMATION SECURITY OFFICER ("CISO")

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

*s/ Jessica L. Perry*
JESSICA PERRY, OBA#22681
MATT DILLON, OBA#19321
Assistant United States Attorneys
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (office)

# TABLE OF CONTENTS

OVERVIEW OF CIPA ................................................................................................. 1

    A.    Section 1 – Definitions ................................................................... 4

    B.    Section 2 – Pretrial Conference ..................................................... 5

    C.    Section 3 – Protective Order .......................................................... 6

    D.    Section 4 – Protection of Classified Information During Discovery ............ 7

    E.    Section 5 and 6 – Procedure for Cases Involving Classified Information Possessed by the Defendant ......................................... 9

    F.    Section 7 – Interlocutory Appeal ................................................. 12

    G.    Section 8 – Procedures Governing the Introduction of Classified Information or at Pretrial Proceeding ........................................... 13

    H.    Section 9 – Security Procedures ................................................. 14

    I.    Section 9A – Coordination Requirement ..................................... 14

    J.    Section 10 – Identification Related to the National Defense ..................... 14

    K.    Sections 11-15 – Miscellaneous Provisions ................................ 15

APPLICATION OF CIPA TO THIS CASE ..................................................... 15

CISO DESIGNATION .................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

### Federal Cases

*Brady v. Maryland,*
  373 U.S. 83 (1963) ................................................................................................ 8

*Central Intelligence Agency v. Sims,*
  471 U.S. 159 (1985) ........................................................................................ 2, 4

*Chicago & Southern Airlines, Inc. v. Waterman S.S. Corp.,*
  33 U.S. 103 (1948) ............................................................................................. 2

*Giglio v. United States,*
  405 U.S. 150 (1972) ........................................................................................... 8

*Kasi v. Angelone,*
  200 F. Supp. 2d 585 (E.D. Va. 2002) ................................................................ 5

*Snepp v. United States,*
  444 U.S. 507 (1980) ........................................................................................... 2

*United States v. Abu-Jihaad,*
  630 F.3d 102 (2d Cir. 2010) .............................................................................. 8

*United States v. Al-Farekh,*
  956 F.3d 99 (2d Cir. 2020) ............................................................................ 3, 7

*United States v. Amawi,*
  695 F.3d 457 (6th Cir. 2012) ...................................................................... 4, 8, 9

*United States v. Apperson,*
  441 F.3d 1162 (10th Cir. 2006) ........................................................................ 2

*United States v. Aref,*
  533 F.3d 72 (2d Cir. 2008) ............................................................................ 7, 8

ii

*United States v. Badia 7,*
    827 F.2d 1458 (11th Cir. 1987) ................................................................. 10

*United States v. Baptista-Rodriguez,*
    17 F.3d 1354 (11th Cir. 1994) ............................................................. 1, 3, 9

*United States v. Collins,*
    720 F.2d 1199 (11th Cir. 1983) ................................................................. 9

*United States v. Dumeisi,*
    424 F.3d 566 (7th Cir. 2005) ..................................................................... 2

*United States v. Hanna,*
    661 F.3d 271 (6th Cir. 2011) ........................................................... 4, 7, 8, 9

*United States v. Johnson,*
    139 F.3d 1359 (11th Cir. 1998) ................................................................. 2

*United States v. Klimavicius-Viloria,*
    144 F.3d 1249 (9th Cir. 1998) ............................................................... 3, 7

*United States v. Lee,*
    90 F. Supp. 2d 1324  (D.N.M. 2000) ........................................................ 5

*United States v. Lemonakis,*
    485 F.2d 941 (D.C. Cir. 1973) .................................................................. 2

*United States v. Libby,*
    429 F. Supp.2d 18 (D.D.C. 2006) ............................................................. 8

*United States v. McVeigh,*
    923 F. Supp. 1310 (D. Colo. 1996) ........................................................... 4

*United States v. Moussaoui,*
    382 F.3d 453 (4th Cir. 2004) ..................................................................... 7

*United States v. Muhtorov,*
    20 F.4th 558 (10th Cir. 2021) ................................................................. 7-8

*United States v. North,*
    708 F. Supp. 399 (D.D.C. 1988) ............................................................... 5

*United States v. Pappas,*
    94 F.3d 795 (2d Cir. 1996) ................................................................... 2, 6

*United States v. Pringle,*
    751 F.2d 419 (1st Cir. 1985) ......................................................... 7, 8, 10

*United States v. Rezaq,*
    134 F.3d 1121 (D.C. Cir. 1998) .......................................................... 7, 9

*United States v. Sarkissian,*
    841 F.2d 959 (9th Cir. 1998) .............................................................. 8, 9

*United States v. Smith,*
    780 F.2d 1102 (4th Cir. 1985) ............................................................ 2, 7

*United States v. Varca,*
    896 F.2d 900 (5th Cir. 1990) .............................................................. 4, 7

*United States v. Yunis,*
    867 F.2d 617 (D.C. Cir. 1989) ...................................................... 3, 4, 7, 8

**Statutes**

18 U.S.C. § 1343 .......................................................................................... 15

18 U.S.C. § 1957 .......................................................................................... 15

18 U.S.C. App. III § 1 ..................................................................................... 4

18 U.S.C. APP. III § 2 .................................................................................. 1, 6

18 U.S.C. App. III § 4 ................................................................................. 7-9

18 U.S.C. App. III § 5 ................................................................................... 10

18 U.S.C. App. III § 6 ............................................................................. 10, 12

18 U.S.C. App. III § 8 ................................................................................... 13

18 U.S.C. App. III § 9 ................................................................................... 14

18 U.S.C. App. III § 10 ................................................................................. 14

iv

**Rules**

Fed. R. Evid. 106 ........................................................................................... 13

Fed. R. Crim. P. 16(d)(1) ........................................................................ 3, 6, 7, 8

**Other Authorities**

Executive Order 13526 ..................................................................................... 5

National Security Act of 1947
  61 Stat. 498, 50 U.S.C. § 403(d)(3) .............................................................. 4

S. Rep. No. 96-823
  *reprinted in* 1980 U.S.C.C.A.N. 4294 (96th Cong. 2d Sess.).................. 6, 7, 12, 13, 14

Securities Procedures
  Pub. L. 96, 94 Stat. 2025 ............................................................................. 16

The United States hereby moves the Court to hold a pretrial conference, pursuant to Section 2 of the Classified Information Procedures Act ("CIPA").[1]  18 U.S.C. App. III § 2.  Because the United States anticipates that issues of discovery, disclosure, or use of classified information will arise during this case, the United States respectfully requests that the Court convene a pretrial conference to consider matters relating to such classified information as required by Section 2 of CIPA.  For that reason, the United States respectfully submits this memorandum of law to apprise the Court of the applicability of CIPA.  As in all cases that may implicate classified information, the government provides the Court with a detailed description of CIPA's procedures, which allow the Court and the parties to protect classified information relating to this case.

In addition to moving this Court for a pretrial conference, the United States requests this Court designate a Classified Information Security Officer ("CISO") to assist the Court and court personnel in handling any motions, pleadings, and orders related to CIPA proceedings.

## OVERVIEW OF CIPA

CIPA contains a set of procedures by which federal district courts rule on pretrial and trial matters concerning the discovery, admissibility, and use of classified information in criminal cases. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994).  CIPA's fundamental

---

[1] The United States acknowledges the Court previously held a conference on February 26, 2026, in which CIPA issues were briefly discussed, along with a scheduling order setting a CIPA conference for April 15, 2026, subject to the Court's availability.  The United States is filing this motion to comply with the scheduling order (Doc. 30), to advise the Court regarding CIPA's procedures, and to move the Court for designation of a Classified Information Security Officer and alternates.  There is no need for an additional pretrial conference prior to the conference tentatively scheduled for April 15, 2026.

1

purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996). CIPA "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006).

The Supreme Court has acknowledged the importance of protecting the nation's secrets from disclosure: "The Government has a compelling interest in protecting both the secrecy of information important to our national security and the appearance of confidentiality so essential to the effective operation of our foreign intelligence service." *CIA v. Sims*, 471 U.S. 159, 175 (1985) (quoting *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (per curiam)); *accord Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 111 (1948) ("The [executive branch] has available intelligence services whose reports are not and ought not to be published to the world."). Federal courts have long recognized that "[i]t is not in the national interest for revelation of either the existence or the product of [foreign intelligence operations and information] to extend beyond the narrowest limits compatible with the assurance that no injustice is done to the criminal defendant." *United States v. Lemonakis*, 485 F.2d 941, 963 (D.C. Cir. 1973).

CIPA neither creates any new right of discovery nor expands the rules governing the admissibility of evidence. *See United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998) ("CIPA has no substantive impact on the admissibility or relevance of probative evidence."); *accord United States v. Dumeisi*, 424 F.3d 566, 578 (7th Cir. 2005) ("CIPA does not create any discovery rights for the defendant."); *United States v. Smith*, 780 F.2d 1102, 1106 (4th Cir. 1985) (en banc).

2

Rather, CIPA applies preexisting discovery law in criminal cases to classified information and restricts discovery of classified information to protect the government's national-security interests. *See Baptista-Rodriguez*, 17 F.3d at 1363-64; *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998). This includes CIPA's confirmation of the "district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security." *United States v. Al-Farekh*, 956 F.3d 99, 107 (2d Cir. 2020).

The government produces discoverable information to the defense in cases involving classified information. But the discovery of classified information must be relevant and actually "helpful to the defense of the accused." *United States v. Yunis*, 867 F.2d 617, 621 (D.C. Cir. 1989) (stating "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified information . . . is entitled only to information that is at least 'helpful to the defense of [the] accused,'"). "While CIPA creates no new rule of evidence regarding admissibility, the procedures it mandates protect a government privilege in classified information similar to the informant's privilege . . . ." *Yunis*, 867 F.2d at 623.[2] *See also*

---

[2] The D.C. Circuit recognized that the government's privilege covers not merely the content of any particular conversation, but also the government's ability to collect the information:

> [T]he government's security interest in the conversation lies not so much in the contents of the conversations, as in the time, place, and nature of the government's ability to intercept the conversations at all. Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's

*United States v. Amawi*, 695 F.3d 457, 475 (6th Cir. 2012) (quoting *Yunis* and finding the classified

information at issue not "relevant and helpful to the defense."); *United States v. Hanna,* 661 F.3d

271, 295 (6th Cir. 2011) (affirming the trial court's *ex parte* and *in camera* decision that classified

information was not actually helpful to the defense).

CIPA does not "expand the traditional rules of discovery under which the government is not

required to provide criminal defendants with information that is neither exculpatory nor, in some

way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *accord*

*United States v. McVeigh*, 923 F. Supp. 1310, 1314 (D. Colo. 1996) ("CIPA does not enlarge the

scope of discovery or of *Brady*."). Simply, CIPA provides that the admissibility of classified

information is governed by the Federal Rules of Evidence.

A.    Section 1—Definitions

For the purpose of CIPA, "classified information" includes any information or material

determined by the United States Government to require protection against unauthorized disclosure

for reasons of national security. 18 U.S.C. App. III § 1(a). "National security" means the national

---

intelligence-gathering capabilities from what these documents revealed
about sources and methods. Implicit in the whole concept of an informant-
type privilege is the necessity that information-gathering agencies protect
from compromise "intelligence sources and methods." The Supreme Court
has expressly recognized the legitimacy of this concern in construing the
National Security Act of 1947, 61 Stat. 498, 50 U.S.C. § 403(d)(3), in *CIA v.
Sims,* 471 U.S. 159, 105 S. Ct. 1881, 85 L.Ed.2d 173 (1985).

*Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989). Thus, courts understand the need to protect the
sources and methods of collecting information as well as the information itself.

4

defense and foreign relations of the United States. *Id.* § 1(b). *See also* Executive Order 13526 (defining classified information).

CIPA applies equally to classified testimony and classified documents. *See United States v. Lee*, 90 F. Supp. 2d 1324, 1326 n.1 (D.N.M. 2000) (citing *United States v. North*, 708 F. Supp. 399, 399-400 (D.D.C. 1988)); *Kasi v. Angelone*, 200 F. Supp. 2d 585, 596-97 (E.D. Va. 2002) (upholding, on habeas review, trial court's application of CIPA to classified testimony).

B.     Section 2—Pretrial Conference

Section 2 of CIPA provides that "[a]t any time after the filing of the indictment or information, any party may move for a pretrial conference to consider matters relating to classified information that may arise in connection with the prosecution." 18 U.S.C. App. III at § 2. After a Section 2 motion is filed, the Court "shall promptly hold a pretrial conference to establish the timing of requests for discovery, the provision of notice required by Section 5 of [CIPA], and the initiation of the procedure established by Section 6 of [CIPA]." *Id.* During the pretrial conference, district courts generally establish the schedule for the case, including the timing of (1) discovery requests by the defense, (2) the defense's pretrial notice to the United States under CIPA Section 5 whereby the defendant identifies an intent to disclose classified information, if any, and explaining the need for such a disclosure, and (3) hearings concerning the use, relevance, and admissibility of classified information pursuant to CIPA Section 6.[3] *Id.* In addition, the court may consider any matters that

---

[3] The United States has already coordinated with counsel for the Defendant to present the Court with a proposed joint scheduling order taking into account CIPA-related deadlines. Accordingly, the Court entered an Amended Scheduling Order on February 27, 2026. (Doc. 30.)

relate to classified information or that may promote a fair and expeditious trial. *Id.* No substantive issues concerning the use of classified information are to be decided in a Section 2 pretrial conference. *See* S. Rep. No. 96-823, at 5-6, reprinted in 1980 U.S.C.C.A.N. 4294, 4298-99 (96th Cong. 2d Sess.).

To foster open discussions at the pretrial conference, Section 2 provides that no admission made by the defendant, or his attorney, at the pretrial conference may be used against the defendant unless the admission is in writing and signed by both the defendant and his attorney. 18 U.S.C. App. III § 2. The Government invokes Section 2 and requests a pretrial conference to establish a CIPA schedule within the schedule for this case.

C.    <u>Section 3—Protective Order</u>

CIPA Section 3 mandates that federal district courts issue a protective order upon motion by the United States to protect against the improper disclosure of any classified information produced by the government to the defense. *Id.* § 3. Section 3 was intended "to codify the well-established practice, based on the inherent authority of federal courts, to issue protective orders," *Pappas*, 94 F.3d at 801, as well as to supplement the Court's authority under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders in connection with the discovery process.[4] In contrast to Rule 16(d)(1)'s discretionary authority, however, Section 3 "makes it clear that protective orders are to be issued, if requested, whenever the government discloses classified information to a defendant in connection with a prosecution, *e.g.* Brady and Jencks material." *Id.*

---

[4] Rule 16(d)(1) provides in relevant part that "at any time the court may, for good cause, deny, restrict or defer discovery or inspection, or grant other appropriate relief."

D.    Section 4—Protection of Classified Information During Discovery

Section 4 of CIPA authorizes federal district courts to deny, or otherwise restrict, discovery of classified documents and information in the possession, custody, or control of the United States. 18 U.S.C. App. III § 4; *see e.g. United States v. Rezaq*, 134 F.3d 1121, 1142 (D.C. Cir. 1998); *Yunis*, 867 F.2d at 619-625.[5]  Similarly, the Federal Rules of Criminal Procedure provide, in pertinent part, that district courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1).  The legislative history of CIPA makes clear that Section 4 was intended to clarify the district court's power under Rule 16(d)(1) to deny, or restrict, discovery to protect national security.  *See* S. Rep. No. 96-823 at 6, 1980 U.S.C.C.A.N. at 4299-4300; *see also Al-Farekh*, 956 F.3d at 107 *Aref*, 533 F.3d at 78-79; *United States v. Pringle*, 751 F. 2d 419, 427 (1st Cir. 1985).

Section 4 provides that a district court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove.  The Court may permit the United States to make

---

[5] The Tenth Circuit has held the *Yunis* "relevant and helpful" standard applies to the discovery of classified information, as have numerous other Circuits. *See United States v. Muhtorov,* 20 F.4th 558, 629 (10th Cir. 2021); *United States v. Klimavicius–Viloria,* 144 F.3d 1249, 1261 (9th Cir. 1998); *United States v. Hanna,* 661 F.3d 271, 295 (6th Cir. 2011); *United States v. Aref,* 533 F.3d 72, 79–80 (2d Cir. 2008); *United States v. Moussaoui,* 382 F.3d 453, 472 (4th Cir. 2004); *United States v. Varca,* 896 F.2d 900, 905 (5th Cir. 1990); *United States v. Smith,* 780 F.2d 1102, 1107 (4th Cir. 1985).

a request for such authorization in the form of a written statement to be inspected by the court alone. 18 U.S.C. App. III § 4.  However, "every court that has considered this issue has held that CIPA permits *ex parte* hearings" as well as written submissions.  *United States v. Amawi*, 695 F.3d 457, 472 (6th Cir. 2012).

Like Federal Rule of Criminal Procedure 16(d)(1), Section 4 provides the government may demonstrate the use of alternatives to be warranted through an *in camera*, *ex parte* submission to the court.  *Id.*; *see United States v. Abu-Jihaad*, 630 F.3d 102, 140 (2nd Cir. 2010); *United States v. Aref*, 533 F.3d 72, 81 (2nd Cir. 2008); *Yunis*, 867 F.2d 617, 622-23 (D.C. Cir. 1989); *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988); *Pringle*, 751 F.2d 419, 427 (1st Cir. 1984).

In essence, Section 4 allows the United States to request *ex parte* and *in camera* review of its decisions regarding the discoverability of classified information and, if determined to be discoverable, whether government-proposed summaries, or substitutions, would place the defendant in substantially the same position as the underlying classified information.  *See*, *e.g.*, *Muhtorov*, 20 F.4th at 633; *Amawi*, 695 F.3d at 472-473; *United States v. Hanna*, 661 F.3d 271, 295 (6th Cir. 2011); *see also United States v. Libby*, 429 F. Supp. 2d 18, 22 (D.D.C. 2006) (amended by *United States v. Libby*, 429 F. Supp. 2d 46, 47 (D.D.C. 2006)).  If so, district courts issue orders approving of the government-proposed summaries and substitutions, which the government then would produce to the defense.[6]

---

[6] The government's discovery review of classified information is consistent with Rule 16, *Brady v. Maryland* (373 U.S. 83 (1963)), *Giglio v. United States* (405 U.S. 150 (1972)), the Jencks Act, and other discovery requirements.  The government will produce in original form, or through an appropriate summary or substitution, any information that is relevant

For example, the government may request that the Court approve of the government's decision to deny discovery of a classified document in its entirety pursuant to Section 4 because the document is not discoverable under the relevant legal standard. *Amawi*, 695 F.3d at 472-73; *Hanna*, 661 F.3d at 295-96. In the alternative, the government may file a motion under Section 4 to delete specific classified information from a document that otherwise contains discoverable information, or to substitute an unclassified summary or admission of fact, in lieu of the underlying classified document. *Id.* This principle applies to portions of classified documents as well as documents in their entirety. *Rezaq*, 134 F.3d at 1142 ("This principle applies to sub-elements of individual documents; if some portion or aspect of a document is classified, a defendant is entitled to receive it only if it may be helpful to his defense."). The government's Section 4 filings, including all attachments, must remain *ex parte* and *in camera*, under seal, and preserved in the record to be made available to the appellate court in the event of an appeal. 18 U.S.C. App. III § 4.

E.    <u>Sections 5 and 6—Procedure for Cases Involving Classified Information Possessed by the Defendant</u>

Sections 5 and 6 of CIPA apply when a criminal defendant who already possesses classified information, either through discovery or due to previous access, seeks to disclose such information during the course of a trial, or pretrial proceeding. *See*, *e.g.*, *Baptista-Rodriguez*, 17 F.3d at 1363; *Sarkissian*, 841 F.2d at 965-66; *Collins*, 720 F.2d at 1199-1200. Section 5 requires the defendant to provide timely written notice to the court and the government describing any classified information

---

and actually helpful to the material preparation of the defense. *See*, *e.g.*, *Amawi,* 695 F.3d at 472-473 (6th Cir. 2012)*; Hanna,* 661 F.3d at 295.

that the defendant reasonably expects to disclose during any pretrial, or trial, proceeding.  *See* 18

U.S.C. App. III § 5(a).  The defendant must provide notice "within the time specified by the court,

or where no time is specified, within thirty days prior to trial."  *Id*.  Although the description of the

classified information may be brief, it must be particularized and set forth the specific classified

information that the defendant reasonably believes to be necessary for the defense.  *See Collins*, 720

F.2d at 1199.  The defendant must provide formal notice under Section 5 even if the government

knows the defendant may assert a defense involving classified information.  *See United States v.*

*Badia*, 827 F.2d 1458, 1465-66 (11th Cir. 1987).

Section 5 specifically prohibits the defendant from disclosing any classified information until

after (1) providing notice, (2) allowing the government to seek a determination of the use, relevance,

and admissibility of such information under Section 6, and (3) the time for any interlocutory appeal

permitted under Section 7 expires.  18 U.S.C. App. III § 5(a).  If the defendant fails to provide the

requisite pretrial notice, the court may prohibit the disclosure of the classified information by the

defense, and it may prohibit the defendant from examining any witness with respect to such

information.  *Id*. § 5(b).  A defendant may not provide "notice" of disclosure under Section 5 for

classified information that he does not already possess as a way of forcing use or disclosure of such

information by the government.  *Pringle*, 751 F.2d at 426-27.

After the defendant files notice under Section 5 of CIPA, the government may request that

the court conduct a hearing to make "all determinations concerning the use, relevance or

admissibility" of the defense-noticed classified information.  18 U.S.C. App. III § 6(a).  Upon such

a request, the court *shall* conduct such a hearing, and it must conduct the hearing *in camera* if the

10

Attorney General certifies to the court that a public proceeding may result in the disclosure of classified information. *Id.* Prior to the hearing, the government must first provide the defendant with notice of the classified information that will be at issue. *Id.* § 6(b)(1). The court also may order the government to provide the defendant with "details as to the portion of the indictment or information at issue in the hearing as are needed to give the defendant fair notice to prepare for the hearing." *Id.* § 6(b)(2).

If the government requests a hearing before the proceeding at which the defendant expects to disclose the classified information, the court must issue a ruling before the proceeding commences. *Id.* § 6(a). The district court's ruling must be in writing and should set forth the basis for its determination as to each item of classified information. *Id.*

After an *in camera* hearing, if the district court determines that the classified information at issue may not be disclosed during the proceeding, the record of the hearing must be sealed and preserved for use in the event of an appeal. *Id.* § 6(d). If the court finds the classified information useful, relevant, or otherwise admissible, the government may ask for the court to approve of (1) the government-proposed substitution of a statement admitting relevant facts that the specific classified information would tend to prove, or (2) the government-proposed substitution of a summary of the classified information. *Id.* § 6(c)(1).

If the court denies the government's motion for substitution under Section 6(c), CIPA permits the government, by affidavit from the Attorney General, to object to the disclosure of the classified information at issue. *Id.* § 6(e)(1). Upon the government's filing of the Attorney General's affidavit, the court "shall order that the defendant not disclose or cause the disclosure of such

11

information," and it may impose a sanction against the government to compensate for the defendant's inability to present proof of the specific item of classified information.  *See* S. Rep. 96-823 at 9, 1980 U.S.C.C.A.N. at 4302-3.  Section 6(e)(2) provides a sliding scale of possible sanctions, which include dismissal of specific counts, finding against the government on an issue to which the classified information related, striking or precluding testimony of a witness, or dismissing the information or indictment.  18 U.S.C. App. III § 6(e)(2).  An order imposing a sanction shall not take effect until the government has the opportunity to appeal the order under Section 7, or thereafter withdraw its objection to the disclosure of the information.  *Id.*

Whenever the court rules at a Section 6(a) hearing that classified information is admissible, the court must require the government to provide the defendant with information it expects to use to rebut the classified information, "unless the interests of fairness do not so require."  *Id.* § 6(f).  The court may place the United States under a continuing duty to disclose rebuttal information.  *Id.*  If the government fails to comply, the court may exclude the rebuttal evidence and prohibit the government from examining any witness with respect to such information.  *Id.*

F.      Section 7—Interlocutory Appeal

Section 7 permits the United States to take an expedited interlocutory appeal to the appellate court if the district court (a) authorizes the disclosure of classified information, (b) imposes sanctions for nondisclosure of classified information, or (c) refuses to issue a protective order sought by the United States to prevent the disclosure of classified information.  *Id.* § 7.  If an appeal is taken, the court must not commence the trial until the appeal is resolved.  *Id.*  Such an appeal and decision does

not affect the defendant's right to lodge a subsequent appeal upon conviction (if any) of an adverse ruling by the trial court. *Id.* § 7(b).

G.    Section 8—Procedures Governing the Introduction of Classified Information at Trial or at Pretrial Proceeding

Section 8 prescribes additional protections and procedures governing the introduction of classified information into evidence. *Id.* § 8. Specifically, Section 8(a) provides that classified documents may be admitted into evidence without changing their classification status. This provision allows the classifying agency, upon completion of the trial, to decide whether information has been so compromised that it could no longer be regarded as classified. *See* S. Rep. No. 96-823 at 10, 1980 U.S.C.C.A.N. at 4304.

Section 8(b) permits the court to order admission into evidence of only a part of a document when fairness does not require the whole document to be considered by the factfinder. The purpose of this provision is to clarify Federal Rule of Evidence 106, known as the rule of completeness, to prevent unnecessary disclosure of classified information. *Id.* at 10-11, 1980 U.S.C.C.A.N. at 4304.

Section 8(c) provides a procedure to address the problem presented at a proceeding when the defendant's counsel asks a question, or embarks on a line of inquiry, that would require the witness to disclose classified information. *Id.* at 11, 1980 U.S.C.C.A.N. at 4304. Specifically, under Section 8(c), the government may object to any question, or line of inquiry, that may require the witness to disclose classified information not previously held to be admissible. 18 U.S.C. App. III § 8(c). Following an objection, the court "shall take such suitable action to determine whether the response is admissible as will safeguard against the compromise of any classified information." *Id.* In effect,

13

this procedure supplements the notice provision under Section 5 and the hearing provision in Section 6(a) to cope with situations that cannot be handled effectively by those sections, such as where the defense does not realize that the answer to a given question will reveal classified information.  S. Rep. No. 96-823 at 11, 1980 U.S.C.C.A.N. at 4304-5.

H.    Section 9—Security Procedures

Section 9 requires the Chief Justice of the United States, in consultation with other executive branch officials, to prescribe rules establishing procedures to protect classified information in the custody of federal courts from unauthorized disclosure.  18 U.S.C. App. III § 9(a).  Security Procedures established pursuant to this provision are codified directly following Section 9 of CIPA.

I.    Section 9A—Coordination Requirement

Section 9A requires an official of the Department of Justice and the appropriate United States Attorney to provide timely briefings of the fact and status of a prosecution involving classified information to a senior official of the agency in which the classified information originated.  *Id*. § 9A(a).

J.    Section 10—Identification of Information Related to the National Defense

This section applies in criminal prosecutions in which the government must prove as an element of the crime charged that certain material relates to the national defense, or otherwise constitutes classified information.  *See* S. Rep. 96-823 at 11-12, 1980 U.S.C.C.A.N. at 4305.  In such a circumstance, Section 10 requires the government to inform the defendant of which portions of the material it reasonably expects to rely upon to prove the classified-information element of the crime. 18 U.S.C. App. III § 10.  Section 10 likely will not be applicable in this case.

14

K.     Sections 11-15 - Miscellaneous Provisions

The remaining sections of CIPA contain various miscellaneous provisions.  Section 11 provides for amendments to Sections 1 through 10 of CIPA.  Section 12 requires the Attorney General to issue guidelines regarding the exercise of prosecutorial discretion over cases in which classified information may be revealed and requires preparation of written findings when prosecution of such cases is declined.  Section 13 requires the Attorney General periodically to report such declination decisions to Congress and, when necessary, to report on the operation and effectiveness of CIPA.  Section 14 identifies the senior officials to whom the functions and duties of the Attorney General under CIPA may be delegated.  Section 15 provides the effective date of CIPA.

## APPLICATION OF CIPA TO THIS CASE

The Defendant is charged with wire fraud, in violation of 18 U.S.C. § 1343, and money laundering, in violation of 18 U.S.C. § 1957, arising out of a scheme to defraud Black Lives Matter Oklahoma Assn. (a/k/a Black Lives Matter OKC).  The United States anticipates that issues relating to classified information will arise in connection with this case due to uncharged conduct by the Defendant, the investigation of which may have resulted in discoverable information.  Accordingly, the United States respectfully moves this Court, pursuant to Section 2 of CIPA, for a pretrial conference to consider the possibility and impact of classified information on this case, including the schedule and discovery deadlines.

## CISO DESIGNATION

As stated above, Section 9 of CIPA requires the Chief Justice of the United States to prescribe security procedures for the protection of classified information in the custody of Federal Courts. On

15

February 12, 1981, Chief Justice Burger promulgated these procedures, which were subsequently updated by Chief Justice Roberts. As stated above, the government anticipates the potential for issues involving classified information to arise in this case. Pursuant to CIPA and Section 2 of the Security Procedures established under Pub. L. 96-456, 94 Stat. 2025 by the Chief Justice of the United States and promulgated pursuant to Section 9 of CIPA, the government requests that this Court designate a CISO to assist the Court and court personnel in handling any motions, pleadings, and implementing any orders relating to CIPA proceedings. Specifically, the United States requests that the Court designate William S. Noble, Security Specialist, for the position of the CISO for this case to perform the duties and responsibilities prescribed for the CISO in the Security Procedures promulgated by the Chief Justice. The United States further requests that the Court designate the following Security Specialists as alternative CISOs, to serve in the event that Mr. Noble is unavailable: Jennifer H. Campbell, Daniel O. Hartenstine, Daniella M. Medel, Matthew W. Mullery, Harry J. Rucker, and Winfield S. "Scooter" Slade.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney


*s/ Jessica L. Perry*
JESSICA PERRY, OBA#22681
MATT DILLON, OBA#19321
Assistant United States Attorneys
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8700 (office)

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 2, 2026, I have filed this document with the United States District Court Clerk's Office and I served the attached document by e-mail on the following, who are registered participants of the ECF System:

Sanjuanita Martinez, Counsel to Defendant
Jeff Byers, Counsel to Defendant


<u>s/*JESSICA L. PERRY*</u>
Assistant U.S. Attorney