**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **-vs-** | ) | **No. CR-25-499-JD** |
| | ) | |
| **TASHELLA SHERI AMORE DICKERSON,** | ) | |
| **a/k/a Sheri Dickerson,** | ) | |
| **a/k/a Sheri Amore,** | ) | |
| **a/k/a Rev. T. Sheri Dickerson,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF EXPERT WITNESSES

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the United States hereby gives notice of its intent to introduce potential[1] expert witness testimony from the following individuals in its case-in-chief at trial, or in its rebuttal to counter testimony:[2]

**LaToya McAllister**: LaToya McAllister, if called to testify by the government, is expected to testify regarding whether the expenditures made by Defendant Tashella Dickerson with funds derived from Black Lives Matter Oklahoma City ("BLMOKC")

---

[1] The United States does not believe the evidence presented by either witness constitutes expert testimony but provides notice to the Defendant in an abundance of caution. Neither Ms. Eppler nor Ms. McAllister is expected to offer evidence of their opinion, as contemplated by Federal Rule of Evidence 702. *See* Fed. R. Evid. 702 (stating that an expert witness may testify "in the form of an opinion"). Rather, both witnesses are expected to testify as fact witnesses based on their personal knowledge and experience.

[2] Under Federal Rule of Evidence 702, expert testimony is admissible when that expert is qualified, and the opinion is both relevant and reliable. Fed. R. Evid. 702 (requiring that experts have "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue").

and/or the Alliance for Global Justice (AFGJ), a designated 501(c)(3) non-profit organization, would be considered tax exempt expenditures under the Internal Revenue Code and its related rules and regulations. *See* 26 U.S.C. §§ 501(c)(3), 509(a)(1), and 170(b)(1)(A)(vi).

Ms. McAllister earned her bachelor's degree in accounting in 2018 from North Carolina Wesleyan College in Wilmington, North Carolina. *See* Ex. 1, McAllister Resume.

McAllister first joined the Internal Revenue Service (IRS) in 2019 and worked in the Small Business/Self-Employed (SBSE) Business Operating Division (BOD) as an Internal Revenue Agent. While in SBSE, McAllister conducted taxpayer audits and assisted IRS-Criminal Investigation (IRS-CI) agents with fraud investigations. In 2023, McAllister became an Internal Revenue Agent in the IRS's Tax Exempt and Government Entities (TE/GE) BOD. In her current role, McAllister performs audits and assists IRS-CI agents with fraud investigations into tax-exempt and government entities. She also assists with processing determination applications for entities requesting 501(c)(3) status from the IRS. She is tasked with making determinations on continuing exempt status of tax-exempt organizations and provides technical advice and assistance to the organizations and their officers. In some cases, she proposes revocation of tax-exempt status and foundation status reclassification. Her review of these applications considers whether these entities are sponsoring any for-profit businesses or activities.

Ms. McAllister, if called by the government, is expected to testify regarding why a tax-exempt sponsoring entity, like AFGJ, would request financial reporting from a sponsored business or entity. She would testify that it is an IRS standard, but not a

requirement, for a sponsoring entity to require financial reports from a sponsored business or entity.

Ms. McAllister is also expected to testify that a tax-exempt entity is required to use its funds for a charitable purpose. Funds used for the personal gain of a charitable organization's director or officer would not be considered a tax-exempt purpose by the IRS. For example, Ms. McAllister would testify that funds used to purchase a personal vehicle would not be considered spending for a tax-exempt purpose. To make this assessment, Ms. McAllister would examine the title of the vehicle to determine whether the expense is for a tax-exempt purpose. A vehicle titled in an individual's name would indicate the vehicle was for personal use. A vehicle titled in an entity's name would indicate the vehicle was for business or charitable use. Further, when auditing a tax-exempt entity, Ms. McAllister looks at whether a substantial amount of expenses were spent on tax-exempt purposes. If funds spent by a tax-exempt entity are used fraudulently and/or for the personal gain of a director or other member, the IRS would not consider those expenses to be incurred for a tax-exempt purpose.

Ms. McAllister has not offered expert testimony in any trial or deposition in the last 4 years. Ms. McAllister has also not authored any publications in the previous 10 years. Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)(v), Ms. McAllister has approved and signed this disclosure. *See* Ex. 2, Attestation of Ms. LaToya McAllister.

**Stephanie Eppler**: Stephanie Eppler, if called to testify by the government, is expected to testify regarding her review of financial accounts belonging to Defendant Tashella Dickerson, BLMOKC, and AFGJ, including records from City National Bank &

Trust (CNB), CashApp, PayPal, Venmo, as well as records from numerous retailers and title companies. In her role as a Forensic Accountant for the Federal Bureau of Investigation (FBI), Ms. Eppler reviewed voluminous records associated with these accounts and traced funds derived from AFGJ, BLMOKC, various bail funds, and returned bail payments. She will testify regarding how she traced the funds and how she determined the funds were expended.

Ms. Eppler graduated from the University of Oklahoma in 2012 with a dual bachelor's degree in Accounting and International Business. *See* Ex. 3, Eppler Resume. In 2013, she received a Masters of Business Administration from Oklahoma Christian University, where she earned the highest score in her graduating class on the Major Fields Standardized Test, scoring in the top 10% nationally. She has worked as a Credit Analyst for Republic Bank & Trust, and as an Audit Senior Associate at Grant Thornton, LLP. In 2015, Ms. Eppler became a Certified Public Accountant, and in 2020 she became a Certified Fraud Examiner.

In 2019, Ms. Eppler joined the FBI as a Forensic Accountant. In this role, she analyzes and evaluates financial data in support of criminal investigations involving healthcare fraud, bankruptcy fraud, money laundering, wire fraud, and other offenses. She assists Special Agents, Intelligence Analysts, Investigative Analysts, and others with analysis to support search warrants, and she participates in the execution of search warrants as a member of FBI's Evidence Response Team. She has attended the FBI's Forensic Accountant Core Training Session (FACTS) program at Quantico, a five-week in-depth forensic accountant training program.

Ms. Eppler served as FBI's Forensic Account in support of the fraud investigation into Dickerson. Accordingly, Ms. Eppler is expected to testify regarding her review of financial records connected to Dickerson, BLMOKC, and/or AFGJ. She will testify the records reflect that BLMOKC raised funds in the late Spring/early Summer of 2020 through PayPal and CashApp. She will testify regarding transfers made from BLMOKC's PayPal and CashApp accounts to Ms. Dickerson's PayPal and CashApp accounts, or to Dickerson's personal accounts at CNB, and how those funds were used by Dickerson (e.g., personal expenditures on travel, food, furniture, and other retail purchases).

Ms. Eppler will also testify regarding her review of CNB records (including cash withdrawals and money orders from Dickerson's 0258 checking account) and records from Tulsa Hyundai. Ms. Eppler will testify regarding how she traced the use of BLMOKC funds to Dickerson's purchase of a 2021 Hyundai Palisade. Ms. Eppler will testify that Dickerson did not have sufficient funds in her 0258 checking account to purchase the 2021 Hyundai Palisade but for funds she received from BLMOKC and/or for the benefit of BLMOKC.

Ms. Eppler will further testify regarding her review of CashApp records related to BLMOKC and Dickerson. She will testify that Dickerson transferred more than $120,000 from her personal bank accounts to her personal CashApp account and accounts belonging to her relatives. Ms. Eppler will testify those transfers could not have occurred but for funds Dickerson received from BLMOKC and/or for the benefit of BLMOKC. Ms. Eppler will also testify regarding how Dickerson used those funds for her personal benefit (e.g., retail purchases, providing funds to relatives, personal grooming, and food deliveries).

Ms. Eppler will further testify regarding funds received by BLMOKC from various bail funds, including the Minnesota Freedom Fund, the Massachusetts Bail Fund, and the Community Justice Exchange (a project of The Tides Center), and how she traced those funds to determine how they were used by Dickerson and/or BLMOKC. Ms. Eppler will also testify regarding her review of bail posted using BLMOKC funds, her review of bail funds returned to Dickerson and/or BLMOKC, and how those funds were deposited and used.

Ms. Eppler will testify regarding Dickerson's travel to the Dominican Republic in July 2021 and to Jamaica in December 2021 and January 2022, and how those trips were funded based up on her review of the bank and airline records.

Ms. Eppler will testify regarding her review of records obtained from various retailers and food delivery services, including Nordstrom/Nordstrom Rack, Macy's, Amazon, Best Buy, Bob Mills Furniture, DoorDash, and others, including the amount Dickerson spent at each retailer, and how those expenditures trace back to funds Dickerson received from BLMOKC and/or for the benefit of BLMOKC. Ms. Eppler will further testify regarding items purchased from the various retailers that Ms. Eppler observed in Dickerson's personal residence during the execution of a search warrant in August 2025.

Ms. Eppler will further testify regarding records reviewed from CNB and various title companies, and how she traced the funds used to purchase real properties referenced in the Indictment, including a church property and five residential properties. Ms. Eppler will testify that, based upon her review of the relevant financial records, Ms. Dickerson

would not have had sufficient funds to make these purchases, but for funds she received from BLMOKC and/or for the benefit of BLMOKC.

Ms. Eppler has not offered expert testimony in any trial or deposition in the last 4 years. She has provided testimony in connection with this matter, which has been produced in discovery. Ms. Eppler has not authored any publications in the previous 10 years. Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G)(v), Ms. Eppler has approved and signed this disclosure. *See* Ex. 4, Attestation of Ms. Stephanie Eppler.

Respectfully submitted,

ROBERT J. TROESTER
United States Attorney

s/Jessica L. Perry
Assistant U.S. Attorneys
Jessica L. Perry, OBA No. 22681
Matt Dillon, OBA No. 19321
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma 73102
(405) 553-8743(Office)
(405) 553-8888 (Fax)
Jessica.Perry2@usdoj.gov
Matthew.Dillon@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2026, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jeff Byers, Counsel to Defendant

*s/ Jessica L. Perry*
JESSICA L. PERRY